FILED

NOV - 9 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                          Deputy Clerk

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

ENTERED

NOV  9 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                          Deputy Clerk

| | |
|---|---|
| In re: | Case No. SV07-13777GM |
| MI LA SUL | Case No. SV07-13778GM |
| _____ Alleged Debtor | Case No. SV07-13779KT |
| In re: | Case No. SV07-13808MT |
| TAI HEE PACK | Case No. SV07-13809KT |
| _____ Alleged Debtor | |
| In re: | Case No. SV07-13924GM |
| SERGIO CASTANEDA | Chapter 7 |
| _____ Alleged Debtor | |
| In re: | **MEMORANDUM OF OPINION REGARDING ORDER TO SHOW CAUSE REGARDING MULTIPLE INVOLUNTARY BANKRUPTCY PETITIONS** |
| JOSE RAMON CORONADO | |
| _____ Alleged Debtor | |
| In re: | DATE:   OCTOBER 18, 2007 |
| PRIYA LAKHANPAL | TIME:    10:00 A.M. |
| _____ Alleged Debtor | PLACE:   COURTROOM 303 |
| | 21041 BURBANK BLVD. |
| In re: | WOODLAND HILLS, CA 91367 |
| THAO HUYNH | |
| _____ Alleged Debtor | |

An unusual series of involuntary and voluntary bankruptcy petitions were recently filed in this court (see attached chart). They raise the issue of whether the filing of a facially correct involuntary bankruptcy petition by a purportedly unsecured creditor is in bad faith when the purpose is to stay the foreclosure on property in which there is little or no equity so as to give an affiliate of that unsecured creditor time to try to negotiate a "short sale" with the foreclosing lender.[1]  A further element to be

---

[1] "Short sale" is a term used to describe a situation in which the foreclosing secured creditor allows its loan to be paid off either by the debtor or by a third party (such as through a sale or refinance) for less than is actually owed on the secured debt.

-1-

considered is that at the time that the alleged unsecured loan was made, the borrower (now the alleged debtor) was advised and agreed that an involuntary bankruptcy may be filed if the secured lender will not allow a short sale. [Powers, 50:9-23.][2] Also, on or about the time that the alleged debtor signed the promissory note, s/he transferred title to the property to a trust, which has as its beneficiaries the transferor and various other individuals who appear to have no relationship to the original owner and apparently did not provide any consideration for their interest in the trust. And finally, the petitioning creditor and its affiliates are involved in voluntary chapter 13 cases and/or involuntary chapter 7 bankruptcies filed by or against the transferor and other beneficiaries, sometimes with multiple properties, and these are generally dismissed for failure to appear at the §341(s) meeting and/or to make payments or because the involuntary petition is not prosecuted. All filings involve a set of companies which have a common ownership or are somehow affiliated with each other.[3]

The initial series of involuntary petitions filed for this purpose seems to have begun on August 27, 2007. From that date through September 24, 2007, there were thirteen involuntary petitions filed in the San Fernando Valley division which meet the same profile. A list of these and other cases involved in this memorandum is attached hereto. The findings in this memorandum are based on the representations made by attorneys for Trust Holding Service Co. and Boston Holding, the testimony of Daniel Powers, a review of the filings themselves and of any motions for relief from stay filed in these cases.

The cases originally came to the court's attention on September 26, 2007, when three involuntary petitions were presented at the filing window, but two of them were facially insufficient since they lacked the signature of the petitioning creditor(s). The petitions were immediately given to

---

[2] All references to page and line numbers are to the transcript of the hearing on October 18, 2007 and are noted as [name, page:line-line].

[3] There is evidence that Creative Group Resources, which filed one involuntary petition, and West Side Servicing, which is the trustee on the grant deeds in five petitions, are not directly owned by Dorothy Matsuba, but have some connection to her and use the same business address as the other companies that she owns. [Powers, 26:12-27:1; Powers, 54:16-55:2.]

1    Judge Thompson, who instructed the clerk not to accept them for filing both on the grounds that two of

2    the petitions were not signed and because all three of the petitions showed the petitioning creditor(s) as

3    owners or secured creditors of the real property in question.  That same day, attorney Zshonette Reed

4    appeared in front of Judge Thompson on behalf of the petitioning creditors to request that the filings be

     allowed.

5        At the hearing, Ms. Reed described the situation as follows: the petitioning creditor(s) are

6    various trusts for which Trust Holding Service Co. (hereafter referred to as Service Co.) is the trustee.[4]

7    The original owner of the property contacts Service Co., which then tries to purchase the property,

8    generally through short sales.  Service Co. either pays off or arranges a short sale to pay off the junior

9    trust deeds and then tries to negotiate a short sale with the holder of the first deed of trust.  By that time,

10   the property is often on the verge of foreclosure and the holder of the senior lien is too backlogged to

11   process the payoff offer.  Some or all of the time, according to Ms. Reed, the holder of the first deed of

12   trust advises Service Co. to file a bankruptcy petition to stop the sale so that they would have time to

13   review the payoff offer.

14       Ms. Reed went on to state that Service Co. attempts to contact the original owner, but if it can

15   not find that person, then Service Co. files an involuntary petition to save the property, give it time to

16   negotiate a "purchase" from the secured creditor, and protect Service Co.'s investment, which is

17   between $20,000 and $100,000 due to the payment of the junior liens.  She also stated that the

18   involuntary petition is filed to give Service Co. time to find the original owner and get him/her to

19   cooperate by filing a voluntary bankruptcy petition.  She noted that Service Co. has about 500

20   properties, so this is only a small percent of their entire portfolio.[5]

21

22

23   [4] Counsel and Mr. Powers refer to "Trust Holding," but there is some confusion by the court as to

24   whether there is only one such company or two with similar names.  For example, the involuntary petition

25   in SV 07-13086 shows "Trust Holding Service" as the trustee of the 5500 Owensmouth Trust, but "Trust

26   Holding Company" as the petitioning creditor.

27   [5] Daniel Powers, an employee of Trust Holding Service Co., later testified that Trust Holding (which

28   may be the same entity as Service Co, but this is not clear to the court) has about 250 properties that it

In summation, Ms. Reed stated that Service Co. is attempting to buy these properties and since the alleged debtor is not available to file a voluntary bankruptcy so as to gain time, Service Co. has no choice but to file an involuntary one. When asked about the beneficiaries to the trust, Ms. Reed stated that these are other investors and it depends on which one or more of them puts the money up for the purchase.

Judge Thompson refused to allow these filings as not being in good faith and the hearing ended.

Since September 24, 2007, no new involuntary petitions have been filed in the San Fernando Valley division with Service Co. (or by its affiliates Trust Holding Co., West Side Servicing, or Creative Group Resources) as the petitioning creditor(s). However, after a two week delay, this group revamped their process. Between October 9, 2007 and October 29, 2007, another affiliate, Boston Holding, filed fourteen more involuntary petitions in the San Fernando Valley division. At least seven of these cases concern debtors or properties that are involved in multiple cases (voluntary and involuntary). See the chart attached hereto.[6]

This new batch of filings are signed by Dorothy Matsuba on behalf of Boston Holding. Ms. Matsuba is also the notary on the grant deed in four of the earlier involuntary petitions. Trust Holding Service Company is her dba and she and her associates have several different real estate-related companies: Trust Holding (which purchases real property), Boston Holding (which does some of the financing for repairs and pays off junior liens), and an escrow company. [Reed, 3:7- 14.]

---

manages and that about 20%-40% of them are in default on the trust deeds. [Powers, 10:24-11:2; Powers, 39:11-24; Powers, 41:1-7.]

[6] Tracing the use of the bankruptcy process in a situation such as this is tedious and inexact. The attached chart displays only some of the filings, particularly the voluntary ones, which were located by finding a repetitive address or name. It is limited to the San Fernando Valley division, though there is no doubt that this pattern also exists in the Los Angeles division of the court. While reviewing voluntary petitions in that large division is a daunting task, there were at least four involuntary petitions filed in the Los Angeles division in the month of October 2007 (see attached chart). These were dismissed as bad faith filings by an order entered on November 7, 2007.

To investigate this flood of involuntary filings, the San Fernando Valley division judges instructed the clerk's office to set an Order to Show Cause hearing on the Thursday after each new case is filed, give a copy of that notice to the filer at the window, and mail a copy to the petitioning creditor and any other named persons.[7]

Judge Mund held a hearing on several of the Orders to Show cause on October 11, 2007. Julias Stewart appeared by phone on behalf of Boston Holding. Mr. Stewart was not very knowledgeable about the dealings of his client, but he did inform the court that stopping the foreclosure was important because a foreclosure would effect the assets available to the parties and Boston Holding has an unsecured promissory note in each case that it was trying to protect through the bankruptcy. He explained that Trust Holding (he was not specific on which of the entities by that name he meant) has title to the real property and that Boston Holding is the lender.[8]

Judge Mund continued these matters to October 18 when they could be heard jointly by Judge Tighe and her (Judge Thompson was away on vacation or also would have participated). Judge Mund asked Mr. Stewart to appear in person at that time. She also told him that she expected him to bring someone to testify who has personal knowledge, as well as the files of the three cases being continued and of any other cases set for October 18.

---

[7] While seventeen involuntary petitions filed in a three week period does not normally constitute a "flood," this is an appropriate word given the fact that in the first six months of 2007 only two involuntary petitions were filed in the San Fernando Valley division and the entire Central District of California received a total of forty-one involuntary petitions.

[8] Daniel Power stated that Trust Holding manages the real property portfolio and has a much lower income than Boston Holding since it doesn't need the money in order to reinstate properties that are in foreclosure or to payoff loans. Trust Holding's regular operating income comes from rent collected. But Boston Holding gets its income at the completion of a short sale. Mr. Powers stated that a major part of Boston Holding's business is "involved directly in saving the property from foreclosure, but once the short sales are completed or when properties come in that are just purchased directly off of the open market, those are just simply managed by Trust Holding." [Powers, 41:13-21; Powers, 40:20-25.]

On October 18, both Ms. Reed and Mr. Stewart appeared on behalf of their respective clients and Daniel Powers testified under oath.

Mr. Stewart summarized the business model of Ms. Matsuba and her companies as follows:

> Ms. Matsuba has two companies. She has one company that's a company that actually purchases property, Trust Holdings [sic]. She has a company that actually gives loans out to people that she finds that has [sic] distressed properties, people want to get out of their situations. And they're secured by promissory notes.

> These people are supposed to pay her back on these promissory notes. They're unsecured debtors. They refuse to pay her. And so she needed a process in order to secure her interest. Some of the properties are potentially going into foreclosure, and in order to secure her debt, she needs to institute some type of process.

> The process that's available to her is the involuntary bankruptcy process. And what that would do for her is, it would allow her to find out what other assets are available to collect on the promissory notes from these debtors. It would stop the foreclosures so she could preserve any equity in the property, if there is any equity in the one real estate property that she's aware of. And, you know, that way she'll have an opportunity to perhaps collect back on her promissory note. And then these debtors would have an opportunity to come before the Court and contest the hearing.

> And it's a chance she takes. It's not a win/win because once she brings the debtors into the court on an unsecured debt, there is still the potential that no assets are available, and the debtor could discharge her action on the promissory note. So it's a process that's available to her. She's using it for the proper purpose, which is to secure her interest in a debt that's owed to her by debtors.

> And I think what caused this big confusion here was that, you know, before she had a lawyer involved, they were following [sic, should read "filing"] these involuntary bankruptcies under the wrong creditor. It made it look like they were using it for an improper purpose. [Stewart, 4:24-6:8.]

Unfortunately, the testimony of Mr. Powers does not confirm the truth of some of the statements made by Mr. Stewart. The purpose of filing these cases is not to collect on the unsecured promissory notes or find other assets of the alleged debtors, but rather it is to gain time so that a Matsuba employee can continue to seek a short sale of the first trust deed and thus a Matsuba entity will become the owner of the property without paying the full amount of the liens on that property. It is to create equity in property that had none when a Matsuba company gained control of it.

Analyzing the information in the various bankruptcy cases and considering the arguments of counsel and the testimony of Mr. Powers, a clear pattern emerges. People who have no equity in their homes (be it houses or condominiums), are facing foreclosure, and want to be relieved of the debts secured by their real property, go to Dorothy Matsuba or one of her companies. [Powers, 9:20-24;

-6-

Powers, 48:5-49:5.] The homeowner signs the house over to a trust in which the transferor is a partial owner (usually 20% or 25%) along with others who appear to have no relation to the transferor or to the property. There seem to be multiple reasons for the transfer, some of which are to allow a Matsuba company to negotiate with the lien holders, the homeowner associations, lease the property to new tenants, reconnect utilities, and take similar actions. [Powers, 46:14-23.] Including the transferor as a beneficiary of the trust is not an indication that the transferor expects to get the property back or to see any monetary reward from a successful short sale to the trust. [Powers, 47:16-25; Powers 49:9-17.]

Boston Holding, one of the Matsuba companies, advances the homeowner some money (although it is usually about $20,000, it could be up to $50,000) and the homeowner signs a promissory note. [Powers, 51:16-19.] There is some ambiguity about the actual use of the money that is memorialized in the note to Boston Holding. Apparently some may be given to the transferor, ostensibly for the purpose of making home repairs to get the property into marketable condition. Some or all of the money may be used directly by Boston Holding to reinstate a junior deed of trust. [Powers, 51:20-52:9; Powers, 49:18-50:8.] The note and the transfer are often prepared at about the same time (and in fact the attached chart demonstrates that those before the court were signed on the same date), although not by the same people because Boston Holding has a different group of employees from those who work for Service Co. [Powers, 20:12-18; Powers, 12:6-22.] There is no evidence that Boston Holding ever intended to be repaid on the promissory notes.

Ms. Reed described the purpose of the unsecured loans as follows:

> Boston Holding may pay off the second, maybe repair the property, fix it up a little bit, give the debtor or the owner of the property, the seller, some moving money for expenses. It varies on how much they're loaning out, but that's for the use of repairing and managing the property. It's not like they're funding loans, but they're paying off certain debts and making repairs. [Reed, 6:15-21.]

Once title is transferred to the trust, Matsuba or one of her entities begins negotiating with the most junior liens to pay them off at less than is owed. From the argument of counsel, it might be inferred that the other beneficiaries to the trust are the investors whose money is being used to pay for the short sales and such might be the case as to certain of the beneficiaries, though Mr. Powers could not testify that this is what occurred. [Powers, 19:9-16.]

However, based on the limited information contained in the cases filed in this court, it does not appear that the beneficiaries are actually investors in the respective properties on which they are listed. This is because some of them are people whose own homes are in foreclosure and it appears that their names are included as a tool for filing additional bankruptcy petitions in an attempt to "buy" the Matsuba companies time for further negotiations with recalcitrant lenders. For example, the involuntary petition package in SV 07- 13927 (attachment hereto line 23, filed 10/17)[9] filed against Kristy Macy Chin at 15842 Magnolia Blvd., Encino, includes a copy of a promissory note executed by Ms. Chin on January 31, 2007, in favor of Boston Holding in the amount of $30,000. On the note she shows her address as 15842 Magnolia. According to SV 07-13223 (attachment hereto, line 4, petition filed 9/4), also filed against Ms. Chin, she transferred her real property to the Worster Trust on January 31, 2007. This second involuntary petition (SV 07-13223) shows her address as 19526 Roscoe Blvd., #B, Northridge and the legal description for the Worster Trust real property is at 4719 Wortser Ave., Sherman Oaks, CA.[10] Yet the Matsuba group would have us believe that on April 9, 2007 Ms. Chin had money to invest in order to save the house at 26706 Via Bellaza, Valencia, CA and thus became a beneficiary of the Suh Bellazza Trust (SV 07-13222, attachment hereto line 6, petition filed 9/4) even though she could not save her own property.[11]

A similar pattern is shown concerning Shanti Lakhanpal, who was a beneficiary of two known

---

[9] Line numbers refer to the attached chart.

[10] In general these trusts use the street name of the property or some combination of that and the name of the transferor. In the case of the grant deed attached to SV 07-13223, the trust is identified as the Worster Trust, but the legal description given corresponds to the address on Wortser Avenue (data for the common address was obtained through Westlaw).

[11] The Chin bankruptcies are particularly complex with five secured creditors listed on some, but not all of the matrixes; various loans on various properties, but most originating in May 2006, and proofs of claim dealing with 5 separate addresses : 4719 Wortser Ave., Sherman Oaks, 15842 Magnolia, Encino, 32 N. 3rd St., #E, Alhambra, 8825 Canterbury Ave., Los Angeles, and 3367 Sycamore Glen, Pasadena. Some of these properties appear in other cases in the attached chart.

trust agreements (Suh Bellazza Trust and Alyssa Trust - see SV 07-12433, attachment hereto line 6, petition filed 7/13) while creating her own trust in an attempt to save her home (28045 Keepsake Way Trust - see SV 07-13222, attachment hereto line 6, petition filed 9/4).

According to Mr. Powers, as part of the process of obtaining these properties, some of the transferors are relocated to other properties managed by Service Co. In fact, some of the transferors are then moved as tenants from property to property. For example, Mr. Powers testified that the Roscoe Ave. property is particularly difficult to keep tenants in because of animosity created by Jose Coronado when he lived in this condominium, leading to complaints by all of the tenants placed there by a Matsuba company concerning the neighbors and the home owners association. [Powers, 44:8-18.] The court notes that the Roscoe Ave. property has been the subject of at least four bankruptcy petitions since April 13, 2007. Mr. Powers testified that "we've been working on completing the short sale on that property for approximately the last year." [Powers, 30:20-21.] The chart set forth below shows that 19526 Roscoe Blvd, #B has been under an automatic stay for almost all of the last six months and it appears that no payments have been made to the secured creditor(s) during that time.

| 19526 Roscoe Blvd. #B, Northridge | | | | | |
|---|---|---|---|---|---|
| type | (alleged) debtor | case number | filed | dismissed | comments |
| ch. 13 | Jose Ramon Coronado | SV 07-11200 | 4/13/07 | 6/1/07 | face sheet filing, dismissed for failure to appear at §341(a)/make payments |
| ch. 13 | Kristy Macy Chin | SV 07-12378 | 7/11/07 | 8/24/07 | face sheet filing, dismissed for failure to appear at §341(a)/make payments |
| invol | Kristy Macy Chin | SV 07-13223 | 9/4/07 | 10/5/07 | |
| invol | Jose Ramon Coronado | filing rejected | 9/26/07 | | |
| invol | Jose Ramon Coronado | SV 07-13808 | 10/10/07 | | |

A similar history is shown as to 5018 Don Pio, Woodland Hills, which also demonstrates that an automatic stay is obtained in the filing of one bankruptcy that affects properties at a different address in which the debtor/alleged debtor has no interest at all.

| 5018 Don Pio, Woodland Hills, CA | | | | |
|---|---|---|---|---|
| type | (alleged) debtor | case number | filed | dismissed |
| ch. 13 | Kyung Jung Lee | SV 07-12164 | 6/26/07 | 8/16/07 |

face sheet filing, dismissed for failure to make payments. According to the motion for relief from stay, the master matrix of Kyung Lee included the loan number for a loan made by the first trust deed lender to Sergio Castenada, who executed a grant deed to De Santis Trust recorded 6/17/07. On 9/6/07 an involuntary petition was filed against Sergio Castenada by the De Santis Trust concerning 12745 De Santis Ave., Sylmar and on 10/9/07 Boston Holding filed an involuntary petition against Sergio Castenada at the De Santis address. No payments had been made on the De Santis loan from Dec. 2006.

| | | | | |
|---|---|---|---|---|
| ch. 13 | Matt Alan Tobias | SV 07-12978 | 8/20/07 | 10/5/07 |

face sheet filing, dismissed for failure to appear at §341(a)/make payments. On 10/22 Boston Holdings filed an involuntary petition against Matt Alan Tobias at 9759 Tunney Ave., Northridge.

| | | | | |
|---|---|---|---|---|
| invol | Kyung Mi You | SV 07-13387 | 9/13/07 | 10/5/07 |

filed by Crescent Trust. On 8/28/07, S. Rampart Trust filed an involuntary petition against Kyung Mi You at 9430 Fox Hill Ln, Chatsworth

One thing is clear:   the filing of these multiple voluntary chapter 13 and involuntary chapter 7 petitions is solely for the purpose of obtaining an automatic stay to stop the foreclosing secured creditor from proceeding so that a Matsuba entity, which may or may not hold an uncollectible debt against the original borrower, can pressure the foreclosing creditor into accepting a lower payoff.  In this way, the Matsuba entity creates equity in the property where none existed and obtains ownership of the property for less than was owed on it.

According to Colliers on Bankruptcy, 15th Ed., ¶ 303.06[1], various courts have discussed five identifiable standards for determining whether an involuntary petition is filed in bad faith and one court has designated a sixth as the "nose test":

(1) subjective test - based on the petitioning creditor's motivation - ie. harassment rather than collection.

(2) improper purpose test - why did the creditor file - ie. to harm the debtor's business?

-10-

(3) <u>objective test</u> - what would a reasonable person in the petitioning creditor's position have done?

(4) <u>improper use</u> - does the creditor's action take disproportionate advantage of other creditors - ie. to reduce an obligation on a guaranty or use the bankruptcy process as if it were the creditor's own private collection agency?

(5) <u>combined objective and subjective</u> - similar to that used in Federal Rule of Bankruptcy Procedure 9011.

(6) <u>nose test</u> - if "it smells like bad faith, it's got to be bad faith." <u>In re Better Care, Ltd.</u>, 97 BR 405, 409 (Bankr. N.D. Ill. 1989) simply states that although courts use fancy tests, the judges really are relying on the smell test.

In general, motions to dismiss involuntary petitions are brought by the alleged debtor. But the bankruptcy court need not wait for the alleged debtor to act. This is particularly true in a collusive filing between the alleged debtor and the petitioning creditor(s), since the alleged debtor certainly will not seek sanctions or to dismiss. Assuming that the petition is ever served, the alleged debtor would likely stipulate to entry of the order for relief or may merely fail to answer and allow the order for relief to be entered by default. Or the petitioning creditor may never serve the summons, since the petitioning creditor obtained the desired time and no longer cares if the case is dismissed. Alternatively, the burden is placed on the foreclosing secured creditor to seek and obtain relief from the automatic stay and, perhaps after several filings by or against different individuals affecting a single property, put an end to the farce by obtaining an order under 11 USC §362(d)(4).

The court need not defer to the alleged debtor or another creditor, but can act on its own:

> It is proper for the Court to inquire to what extent the Debtor is involved in the institution of an involuntary case and if it appears there was collusion between the Debtor and the petitioning creditors, and they fraudulently invoked the jurisdiction of the Court, the Court will not tolerate the maintenance of an involuntary petition. <u>In re Winn</u>, 49 B.R. 237, 239 (Bankr., M.D..Fla. 1985), quoted with approval in <u>F.D.I.C. v. Cortez (In re Cortez)</u>, 96. F.3d 50, 51 (2d Cir. 1996).[12]

---

[12] Although <u>Winn</u> infers that the court's ability to inquire is limited to a situation in which it is requested to do so (such as by the secured creditor), the second circuit places no such limitation in its opinion in <u>Cortez</u>.

-11-

1    The testimony of Mr. Powers demonstrates that from the beginning of the note/trust process,

2    bankruptcy was a known option and that the transferor consented to the possible filing of an involuntary

3    petition. In fact, the involuntary is filed when the transferor cannot be located or refuses to file a

4    voluntary chapter 13 petition to stay the foreclosure sale. [Powers, 50:9-23; Powers, 22:6-23:2; Powers,

5    37:3-14; Powers, 28:11-30:21.]

6    Although there are not many published decisions defining what constitutes a bad faith filing of a

7    facially correct involuntary petition, some guidance exists which applies to the facts in this series of

8    cases. In re Stern, 268 B.R. 390 (Bankr., S.D.N.Y. 2001) is particularly instructive.

9    In Stern, a chapter 11 involuntary petition was filed against Ms. Stern to stay a foreclosure sale.

10   After relief from stay was granted to the foreclosing creditor, the involuntary petition was dismissed by

11   the court for failure to prosecute because it had never been served. About six weeks later a second

12   chapter 11 involuntary petition was filed against Ms. Stern by a different group of petitioning creditors.

13   Once again no action was taken to serve the petition, but several months later the secured creditor again

14   sought relief from the automatic stay. At the lift stay hearing it was determined by the court that the

15   purpose of the filing of the involuntary petition was to stall the bank's foreclosure sale on Ms. Stern's

16   house so that the petitioning creditors could try to purchase the house by negotiating with the bank in an

17   attempt to convince the bank to take less than it was owed. The court found this to be a "dubious

18   motive" and set a hearing on sanctions. The court noted that these petitioning creditors were involved in

19   two other involuntary chapter 11 petitions in a different district (the Eastern District of New York -

20   apparently against other debtors), both of which were dismissed for failure to prosecute.

21   At the sanctions hearing, the court found that these petitioning creditors believed that their

22   claims would not be paid out of the proceeds of a foreclosure sale, though they did not know the value

23   of the property. The court also found that if the purpose of the filing really was to be paid and there was

24   equity in the property, an involuntary petition might be in good faith so long as the petitioning creditors

25   moved expeditiously for an order for relief and to appoint a trustee to liquidate the property and thus

26   realize on the equity. But if the purpose was merely to buy the property from the bank, the petitioning

27   creditors should have done that by bidding at the foreclosure sale. The court determined that the latter

28

-12-

reason was the purpose for filing:

> Finally, [one of the petitioning creditor's] statements that the Petitioning Creditors did not know the value of [alleged debtor's] home, but wanted to prevent the foreclosure to "see what the bank really wanted as a settlement offer" tend to show that the Petitioning Creditors did not file this petition to preserve equity but rather to harass and delay the mortgagee bank. Id. at 394-5.

The court ordered that the petitioning creditors pay sanctions to the court.

Although the Stern case is most similar to the actions of Deborah Matsuba and her affiliates, there are other opinions which help flesh out the issue of when a technically correct involuntary petition is filed in bad faith.

In re Delray Associates Ltd., 212 B.R. 511 (Bankr., D. Md., 1997) concerned an involuntary petition filed after the default on a confirmed chapter 11 plan in the prior case. The court held that the second filing was orchestrated by the debtor and thus deemed this to be a serial filing and in bad faith. The court dismissed the case.

In re Valdez, 250 B.R. 386 (D. Or. 1999) started with a chapter 13, which was dismissed for bad faith because the debtor had not revealed all assets and had filed for the sole purpose of forum shopping in order to resolve a tax dispute. Two weeks later the debtor's former attorney filed an involuntary petition under chapter 7 for fees owed. When the debtor went back to the attorney (now the petitioning creditor) for help in responding to the petition, the attorney either prepared the answer himself or had an associate in his firm do it. Once again the assets were omitted. The district court affirmed the dismissal, finding that although there was no collusion in the filing of the petition, collusion existed in the preparation of the response and that this was done to circumvent the court's prior order.

However, a case started in a collusive fashion can be saved if the court finds that reorganization is possible and the case passes the "nose test." For example, in In re Kingston Square Associates, 214 B.R. 713 (Bankr. S.D.N.Y. 1997), the debtor orchestrated the involuntary chapter 11 petition by soliciting creditors to sign it because the provisions of corporate governance did not allow the corporation to file a voluntary petition. But the court found that the bankruptcy was necessary to prevent the loss of value and the potential for reorganization and since the debtor did not violate any statute or order, the court did not dismiss the case.

The situation before this court falls squarely within the category of the improper use of 11 USC

§303 in that the actions by the petitioning creditor take disproportionate advantage of the secured creditors by imposing the automatic stay in order to give the petitioning creditor time and leverage to negotiate the payoff of that lien for less than is owed.  The history of the involuntary petitions filed by Boston Holding, Service Co. or Trust Holding and other Matsuba entities and affiliates before this court demonstrate that the stay may be invoked not just once, but several times as to each property through multiple bankruptcy filings, both voluntary and involuntary.

As noted above, there is no single test to determine bad faith.  It very much depends on the facts of each case.  The involuntary petitions filed by the various Matsuba entities and affiliates (through the series of specific trusts) fall into the category of those in which one creditor seeks a disproportionate advantage over another creditor.  This is grounds for dismissal:

> An improper use of the Bankruptcy Code justifying a finding of bad faith will then exist any time a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage. In re Better Care Ltd., 97 B.R. 405, 411 (Bankr., N.D. Ill. 1989).

Although there is a presumption of good faith in favor of the petitioning creditor, this can be overcome when the court looks at the totality of the circumstances.  Included in the tests used to determine the totality of the circumstances is whether the petitioning creditor "attempts to obtain disproportionate advantage by means of an involuntary filing." In re John Richards Home Building Co., LLC, 439 F.3d 248, 254 (6th Cir. 2006).

The Ninth Circuit has no opinion setting forth the standard in a situation like the one before this court.  But in dealing with dismissal of an involuntary petition because the petitioning creditor fails to prove that the alleged debtor has generally not been paying its debts, the Ninth Circuit did adopt the totality of the circumstances test. In re Vortex, 277 F.3d 1057 (9th Cir. 2002). See also Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.), 370 B.R. 236, 247 (BAP, 9th Cir. 2007).  It appears to this court that the totality of the circumstances test is the appropriate one to apply in determining whether the petitioning creditor is attempting to obtain a disproportionate advantage over another creditor or creditors by means of filing an involuntary bankruptcy petition.

Further, the Ninth Circuit Bankruptcy Appellate Panel has held that whether a party has acted in

-14-

bad faith is a question of fact to be determined by an objective test. If a reasonable person would believe that these actions constitute bad faith, then the court should find that they are bad faith. <u>Jeffe v. Waverlength, Inc. (In re Wavelength, Inc.)</u>, 61 B.R. 614, 620 (BAP 9th Cir. 1986). This is grounds for dismissing an involuntary petition.

Because the totality of the circumstances here demonstrates that this group of cases was filed in a collusive fashion primarily to take advantage of the secured lender and with no true intention to collect an unsecrued debt, and a reasonable person would find that such action is in bad faith, they are in bad faith and this is an improper use of 11 USC §303.

Based on the above, the court will dismiss the involuntary petitions set for hearing on October 18, 2007.

DATED: 11/9/07

                    GERALDINE MUND
                    United States Bankruptcy Judge

DATED: NOV - 9 2007

                    KATHLEEN THOMPSON
                    United States Bankruptcy Judge

DATED: 11/9/07

                    MAUREEN A. TIGHE
                    United States Bankruptcy Judge

| | DATE, CASE, AND INVOLUNTARY DEBTOR | | | INVOLUNTARY PETITION INFORMATION | | |
|---|---|---|---|---|---|---|
| | DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | INVOLUNTARY PROP. ADDRESS | PETITIONING CREDITOR | CLAIM |
| 1 | 8/27/2007 | SV 07-13086 GM | Soraya Turabaz | 5500 Owensmouth Av., Woodland Hills, CA | 5500 Owensmouth Trust, Young Park Trustee, Trust Holding Service, Trust Holding Co. | Real Estate - $180,000 |
| 2 | 8/28/2007 | SV 07-13107 KT | Kyung Jung Lee | 9430 Fox Hill Ln, Chatsworth, CA | S. Rampart Trust, Dan Powers trustee, Trust Holding Service | Real Estate - $600,000 |
| 3 | 8/28/2007 | SV 07-13108 KT | Suck Ju Kim | 10329 Wish Av., Granada Hills, CA | Samoa Trust, Dan Powers trustee, Trust Holding Service | Real Estate - $250,000 |
| 4 | 8/29/2007 | SV 07-13148 KT | Andrea Fuller | 17431 Elkwood St, Northridge, CA | 17431 Elkwood Trust, Daniel Powers trustee, Trust Holding Service | Real Estate - $350,000 |
| 5 | 9/4/2007 | SV 07-13223 MT | Kisly Mary Chin | 19526 Roscoe Blvd, #B, Northridge, CA | 19526 Roscoe Blvd, Trust, Young Park trustee, Trust Holding Co. | Real Estate - $600,000 |
| 6 | 9/4/2007 | SV 07-13222 KT | Shanti Lakhanpal | 28045 Keepsake Way, Valencia, CA | 28045 Keepsake Way Trust, Young Park trustee, Trust Holding Service, Trust Holding Co. | Real Estate - $400,000 |
| 7 | 9/4/2007 | SV 07-13233 KT | Michael Williams | 4330 Altaima Dr., Woodland Hills, CA | 4330 Altaima Dr. Trust, Young Park trustee, Trust Holding Co. | Real Estate - $700,000 |
| 8 | 9/6/2007 | SV 07-13269 KT | Sergio Castaneda | 12745 De Santis Av., Symar CA | De Santis Trust, Daniel Powers trustee, Trust Holding Service Co. | Real Estate - $350,000 |
| 9 | 9/11/2007 | SV 07-13337 KT | Gerardo Torres | 5544 Fallbrook Ave, Woodland Hills , CA | 5544 Fallbrook Trust, Daniel Powers trustee, West Side Servicing | Real Estate - $250,000 |
| 10 | 9/13/2007 | SV 07-13387 KT | Kyung Mi You | 5018 Don Pio Dr., Woodland Hills, CA | Crescent Trust, Daniel Powers trustee, Trust Holding Service Co. | Real Estate - $500,000 |
| 11 | 9/14/2007 | SV 07-13410 MT | Terrie Lynn Manning | 4727 Greenbach Av., Sherman Oaks, CA | Creative Group Resources by Ramon Garcia | Real Estate - $400,000 |
| 12 | 9/20/2007 | SV 07-13483 MT | Armen Atabekyan | 9131 Variation Av., Northridge, CA | The Peters Trust, Daniel Powers trustee, West Side Servicing Co. | Real Estate - $100,000 |
| 13 | 9/24/2007 | SV 07-13519 GM | Ronald de la Fuente | 6501 Radford Av, N. Hollywood, CA | Radford Trust,Daniel Powers, Trust Holding Service | Real Estate - $325,000 |
| 14 | 9/26/2007 | Filing rejected | Jose Coronado | 19526 Roscoe Blvd, #B, Northridge, CA | On trustee, Daniel Powers Trust Holding Service | Real Estate - $400,000 |
| 15 | 9/26/2007 | Filing rejected | Yushian Luan | 5500 Owensmouth Av., Woodland Hills, CA | Luan Abc Trust, Trust Holding Service Co. | Real Estate - $400,000 |
| 16 | 9/26/2007 | Filing rejected | Mimi Bentsima | 19947 Merridy St., Chatsworth, CA | West Franklin Trust, Mardi Gras Trust, St. Ivea Trust, Trust Holding | Real Estate - $750,000, $699,000, $2,400,000 |
| 17 | 10/9/2007 | SV 07-13777 GM | Mi La Sul | 29152 Discovery Ridge Dr., Santa Clarita, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $38,000 |

| DATE, CASE, AND INVOLUNTARY DEBTOR | | | INVOLUNTARY PETITION INFORMATION | | |
| DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | INVOLUNTARY PROP. ADDRESS | PETITIONING CREDITOR | CLAIM |
|---|---|---|---|---|---|
| 18 | 10/9/2007 | SV 07-13778 GM | Tai Hae Pack | 17611 Enadia Way, Van Nuys, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $32,000 |
| 19 | 10/9/2007 | SV 07-13779 KT | Sergio Castaneda | 12745 De Santa Av., Sylmar CA | Boston Holding/Dorothy Matsuba | Promissory Note - $35,000 |
| 20 | 10/10/2007 | SV 07-13808 MT | Jose Ramon Coronado | 16528 Roscoe Blvd. #B, Northridge, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $24,000 |
| 21 | 10/10/2007 | SV 07-13850 KT | Preya Lakhangaul | 20200 Devonshire St., Chatsworth, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $41,000 |
| 22 | 10/17/2007 | SV 07-13924 GM | Thao Huynh | 12024 Susan Dr., Granada Hills, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $76,000 |
| 23 | 10/17/2007 | SV 07-13927 MT | Kristy Macy Chin | 15942 Magnolia Blvd., Encino, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $90,000 |
| 24 | 10/19/2007 | SV 07-13969 KT | Chun Ho Shin | 10580 White Oak Ave., Granada Hills, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $31,000 |
| 25 | 10/19/2007 | SV 07-13970 GM | Il Hyun Jang | 5022 Don Pio Dr., Woodland Hills, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $25,000 |
| 26 | 10/22/2007 | SV 07-13997 KT | Matt Allan Robles | 9759 Tunney Ave., Northridge, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $43,000 |
| 27 | 10/22/2007 | SV 07-14020 GM | Mirni Benetska Yosifbayev | 4815 Kester Ave. #10, Sherman Oaks, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $47,000 |
| 28 | 10/25/2007 | SV 07-14072 KT | Gerardo Torres | 8544 Fallbrook Ave., Woodland Hills, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $26,000 |
| 29 | 10/25/2007 | SV 07-14074 KT | Yale Buckner | 2813 Wanda Ave., Simi Valley, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $23,000 |
| 30 | 10/25/2007 | SV 07-14130 | Nicholas Nkhama Hobbs | 14245 Berg St., Sylmar, CA | Boston Holding/Dorothy Matsuba | Promissory Note - $21,000 |
| 31 | n/a | n/a | Laura Lee Shuark | | | |
| 32 | n/a | n/a | Choi Hoon Suk | | | |
| 33 | n/a | n/a | Chang Hoon Choi | | | |
| 34 | n/a | n/a | Lisa Lee Smith | | | |

| | DATE, CASE, AND INVOLUNTARY DEBTOR | | | INVOLUNTARY PETITION INFORMATION | | |
|---|---|---|---|---|---|---|
| | DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | INVOLUNTARY PROP. ADDRESS | PETITIONING CREDITOR | CLAIM |
| 35 | n/a | n/a | Ho Saung Shin | | | |
| 36 | n/a | n/a | Jin Hong | | | |
| 37 | n/a | n/a | William Joseph Hansen | | | |
| 38 | n/a | n/a | Eduardo Alan Luevano | | | |
| **LOS ANGELES CASES:** | | | | | | |
| 39 | 10/9/2007 | LA 07-18970 SB | Hee Sook Shim | 621 Heritage Ct., Azusa, CA | Boston Holding/Dorothy Matsuda | promissory note - $31,000 |
| 40 | 10/9/2007 | LA 07-18972 AA | Eun Joo Cho | 800 W. 1st St. #710, Los Angeles, CA | Boston Holding/Dorothy Matsuda | promissory note - $30,000 |
| 41 | 10/9/2007 | LA 07-18996 TD | Chunhua Zhao | 3171 W. Olympic Blvd. #1, Los Angeles, CA | Boston Holding/Dorothy Matsuda | promissory note - $27,000 |
| 42 | 10/22/2007 | LA 07-19491 ER | Ho Dong Jo | 10442 Jardine Ave., Sunland CA | Boston Holding/Dorothy Matsuda | promissory note - $24,000 |

| # | DATE, CASE, AND INVOLUNTARY INFORMATION | | INVOLUNTARY PETITION INFORMATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | DATE FILED / CASE NO | ALLEGED DEBTOR | Trust Agreement | Grant Deed to | Date of Note | Date of Deed | Date Recorded | Deed Notary | Status Conf | Comments on Involuntary |
| 1 | 8/27/2007/SV 07-13086 GM | Soraya Turabaz | 3/30/2007 | Trust Holding Co. as trustee | | 3/30/2007 | 4/11/2007 | Dorothy Matsuba | 10/2/2007 | no pos.  Case dismissed 10/4   RFS filed |
| 2 | 8/28/2007/SV 07-13107 KT | Kyung Jung Lee | | Trust Holding Co. as trustee | | 10/5/2006 | | Jessie Hong | 10/2/2007 | no pos.  Case dismissed 10/5   RF S filed.  Grant deed attached to invol Pet.  Is for address of 14440 Samoa Ave #4, Tujunga.  This is the prop address per RF S, but not the street address for of no petition |
| 3 | 8/28/2007/SV 07-13108 KT | Suck Ja Kim | | Westside Servicing Co. as trustee | | 12/5/2006 | 2/9/2007 | Charlie Yu | 10/2/2007 | no pos.  Case dismissed 10/5 |
| 4 | 8/29/2007/SV 07-13148 KT | Andrea Fuller | | Westside Servicing Co. as trustee | | 1/9/2007 | 3/16/2007 | Dorothy Matsuba | 10/2/2007 | no pos.  Case dismissed 10/5 |
| 5 | 9/4/2007/SV 07-13223 MT | Kristy Maoyi Chin | | Westside Servicing Co. as trustee | | 1/31/2007 | 4/7/2007 | Alex Herrera | 10/2/2007 | no pos.  Case dismissed 10/5.  Grant deed to the Worster Trust |
| 6 | 9/4/2007/SV 07-13222 KT | Shanti Lakhanpal | | Trust Holding Service Co. as trustee | | 5/14/2007 | 6/13/2007 | Alex Herrera | 10/2/2007 | no pos.  Case dismissed 10/5.  Motion for RFS for 11120 Runnymedo. Also motion on Keepsake |
| 7 | 9/4/2007/SV 07-13233 KT | Michael Williams | | Trust Holding Service Co. as trustee | | 5/8/2007 | 5/15/2007 | Alex Herrera | 10/4/2007 | no pos.  Case dismissed 10/5.  Motion for RFS for Alhama.  Also motion on 5010 Don Pio (address in Kyung Mi You, 07-13367), but also Woodland Hills loans also appear on the matrix of Hong, 07-13108 (#36 herein) |
| 8 | 9/6/2007/SV 07-13268 KT | Sergio Castaneda | | De Santis Trust | | 6/18/2007 | 6/27/2007 | Alex Herrera | 10/2/2007 | Case dismissed 10/5.  America's Servicing loan also appears on the matrix of Lee, 07-12164 (line 2 herein) |
| 9 | 9/11/2007/SV 07-13337 KT | Gerardo Torres | | West Side Servicing Co | | 2/6/2007 | 4/2/2007 | Alex Herrera | 10/2/2007 | Case dismissed 10/5. |
| 10 | 9/13/2007/SV 07-13367 KT | Kyung Mi You | | Trust Holding Service Co. | | 3/5/2007 | 4/16/2007 | Eric Yi | 10/2/2007 | Case dismissed 10/5 |
| 11 | 9/14/2007/SV 07-13410 MT | Terrie Lynn Manning | | Creative Group Resources LLC | | 1/19/2007 | 2/16/2006 | Dorothy Matsuba | 10/2/2007 | Case dismissed 10/5.  Creative Group uses address of 21528 Osborne St, Canoga Park, which is the address used by Trust Holding Service Co |
| 12 | 9/20/2007/SV 07-13483 MT | Armen Alakhveryan | | The Peters Trust, West Side Servicing | | 10/27/2006 | | Dorothy Matsuba | 10/2/2007 | Case dismissed 10/4 |
| 13 | 9/24/2007/SV 07-13519 GM | Ronald de la Fuente | | Radford Trust | | 5/14/2007 | 5/25/2007 | Alex Herrera | 11/6/2007 | Case dismissed 10/12.  The National City mortgage also appears on the matrix of Choi, 07-12699 (#33 herein) |
| 14 | 9/26/2007/Filing rejected | Jose Coronado | | Trust Holding Service Co. | | 5/12/2007 | 5/8/2007 | Yoon Yi Cha | | involuntary petition not signed |
| 15 | 9/26/2007/Filing rejected | Yushan Lien | | Trust Holding Service Co. | | | | | | involuntary petition not signed |
| 16 | 9/26/2007/Filing rejected | Mimi Banshai | | Trust Holding Service Co. | | 3/29/2007 | 4/7/2007 | Jaime Matsuba | | 3 grant deeds to the three different trusts. All dates the same date |
| 17 | 10/9/2007/SV 07-13777 GM | Mi La Sul | | | | 5/18/2007 | | | 11/14/2007 filed | Julas Stewart substituted in as attorney for Boston Holdings   RFS |

U:\Involuntaries expanded.xls, page 4

highlight notes debtors or properties in multiple cases

11/8/2007

| DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | Trust Agreement | Grant Deed to | Date of Note | Date of Deed | Date Recorded | Deed Notary | Status Cont | Comments on Involuntary |
|---|---|---|---|---|---|---|---|---|---|---|
| 18 | 10/9/2007 | SV 07-13778 GM | Tai Hee Pack | | | 12/15/2006 | | | 11/14/2007 | Jukas Stewart substituted in as attorney for Boston Holdings |
| 19 | 10/9/2007 | SV 07-13779 KT | Sergio Castañeda | | | 6/8/2007 | | | 11/20/2007 | Jukas Stewart substituted in as attorney for Boston Holdings. |
| 20 | 10/10/2007 | SV 07-13808 MT | Jose Ramon Coronado | | | 11/1/2007 | | | | |
| 21 | 10/10/2007 | SV 07-13809 KT | Priya Lakhanpal | | | 4/17/2007 | | | 11/20/2007 | Jukas Stewart substituted in as attorney for Boston Holdings |
| 22 | 10/17/2007 | SV 07-13924 GM | Thao Huynh | | | 5/13/2007 | | | 12/5/2007 | |
| 23 | 10/17/2007 | SV 07-13927 MT | Kristy Marcy Chan | | | 1/31/2007 | | | | |
| 24 | 10/19/2007 | SV 07-13969 KT | Chun Ho Shin | | | 1/12/2007 | | | | |
| 25 | 10/19/2007 | SV 07-13970 GM | Il Hyun Jang | | | 4/12/2007 | | | | location of principal assets: 4862 Simone Way, Cypress, CA |
| 26 | 10/22/2007 | SV 07-13997 KT | Matt Alan Hotaas | | | 4/15/2007 | | | | |
| 27 | 10/22/2007 | SV 07-14026 GM | Mimi Baleshai Yoskhapyev | | | 3/15/2007 | | | | |
| 28 | 10/25/2007 | SV 07-14072 KT | Gerardo Torres | | | 4/22/2007 | | | 11/2/2007 | |
| 29 | 10/25/2007 | SV 07-14074 KT | Yale Buckner | | | 5/2/2007 | | | 11/27/2007 | |
| 30 | 10/25/2007 | SV 07-14130 | Nicholaus Nadkarni Hobbs | | | 6/21/2007 | | | 12/5/2007 | (the EMC loan also appears on the matrix of Hong, 07-13106 (#36 herein) |
| 31 | n/a | n/a | Laura Lee Shank | | | | | | | |
| 32 | n/a | n/a | Chul Hoon Suk | | | | | | | |
| 33 | n/a | n/a | Chang Hoar Choi | | | | | | | |
| 34 | n/a | n/a | Lisa Lee Smith | | | | | | | |

U/Involuntaries expanded.xls, page 5

highlight notes debtors or properties in multiple cases

| DATE, CASE, AND INVOLUNTARY DEBTOR | | INVOLUNTARY PETITION INFORMATION | | | | | | | |
| DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | Trust Agreement | Grant Deed to | Date of Note | Date of Deed | Date Recorded | Deed Notary | Status Conf | Comments on Involuntary |
|---|---|---|---|---|---|---|---|---|---|---|
| 35 n/a | n/a | Ho Seung Shin | | | | | | | | |
| 36 n/a | n/a | Jin Hong | | | | | | | | |
| 37 n/a | n/a | William Joseph Hansen | | | | | | | | |
| 38 n/a | n/a | Eduardo Alan Luevano | | | | | | | | |
| LOS ANGELES CASES | | | | | | | | | | |
| 39 | 10/9/2007 | LA 07-18970 SB | Hee Sook Sham | | | 5/11/2007 | | | | 11/20/2007 | Jules Stewart substituted in for petitioning creditor on 10/17 Dismissed by court with prejudice - 11/7/07 |
| 40 | 10/9/2007 | LA 07-18972 AA | Eun Joo Cho | | | 5/1/2007 | | | | | Jules Stewart substituted in for petitioning creditor - 11/7/07 Dismissed by court with prejudice - 11/7/07 |
| 41 | 10/9/2007 | LA 07-18968 TD | Chunhua Zhao | | | 10/31/2007 | | | | | Jules Stewart substituted in for petitioning creditor on 10/17 Dismissed by court with prejudice - 11/7/07 |
| 42 | 10/22/2007 | LA 07-19491 ER | Ho Dong Jo | | | 1/15/2007 | | | | 12/6/2007 | Dismissed by court with prejudice - 11/7/07 |

| # | DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | Related Voluntary Case(s) | Chapter | Address | date filed | date dismissed | Comments on related voluntary case(s) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 8/27/2007 | SV 07-13086 GM | Soraya Turakhiz | | | | | | Face sheet filing.  RFS shows loan to Sergio Casteneda.  No payments from 2/06-8/06.  Grant deed to De Santis Trust recorded 8/27/07.  This loan on Lee creditor list.  The America Service's loan also appears on the matrix on Casteneda invol., 07-13089 (#8 herein) |
| 2 | 8/28/2007 | SV 07-13107 KT | Kyung Jung Lee | SV 07-12164 KT | 13 | 5018 Don Pio, Woodland Hills, CA | 6/26/2007 | 8/16/2007 | Face sheet filing.  No appearance at 341(a), no payments. |
| 3 | 8/28/2007 | SV 07-13108 KT | Suck Ja Kim | | | | | | |
| 4 | 8/29/2007 | SV 07-13148 KT | Andrea Fuller | SV 07-12233 KT | 13 | 6034 Sunflower St., Simi Valley, CA; mailing to P.O. 3069, Chatsworth, CA 91313 | 6/29/2007 | 8/16/2007 | Face sheet filing.  No appearance at 341(a), no payments. |
| 5 | 9/4/2007 | SV 07-13222 KT | Kristy Macy Chin | SV 07-12376 MT; SV 07-12433xT | | | | | see below |
| 6 | 9/4/2007 | SV 07-13222 KT | Shanti Lakhanpal | SV 07-12433 KT | 13 | 28045 Keepsake Way, Valencia, CA; mailing to P.O. 3836, Chatsworth, CA 91313 (same POB as Trust Holding Service on involuntaries) | 7/13/2007 | 8/23/2007 | Face sheet filing.  RFS on 2/07/06 via Deed of Trust, Valencia, CA.  Trust agreement from Jane Sun transferring 20% interest each to Kristy Macy Chin, Ki Han Jeong, Jane Ertsook Sun, William Joseph Hansen, and Shanti Lakhanpal for no consideration.  Trust agreement created the Suh Bellezza Trust.  Trust Holding Service Co. trustee.  RFS filed as 9/17/21 Alyssa Dr., Santa Clarita, CA - trust agreement from Chan Yi to Hyeong Lee, then trust agreement from Hyeong Lee to the Alyssa Trust with 25% interest each to Hyeong Lee, Seon M. Kon, Shanti Lakhanpal and William Joseph Hansen.  Trust Holding Service Co., trustee.  The indymac mortgage also appears on the matrix of Shin, 07-12948 (#35 herein) |
| 7 | 9/4/2007 | SV 07-13233 KT | Michael Williams | | | | | | |
| 8 | 9/6/2007 | SV 07-13269 KT | Sergio Casteneda | | | | | | |
| 9 | 9/11/2007 | SV 07-13337 KT | Gerardo Torres | SV 07-12164 KT | | | | | see above |
| 10 | 9/13/2007 | SV 07-13387 KT | Kyung Mi You | | | | | | |
| 11 | 9/14/2007 | SV 07-13410 MT | Terrie Lynn Manning | SV 07-11646 MT | 13 | 4727 Greenbush Ave., Sherman Oaks, CA | 5/18/2007 | 7/30/2007 | Face sheet filing.  No appearance at 341(a), no payments.  The America Servcing loan also appears on the matrix in Choi, 07-12939 (#23 herein) |
| 12 | 9/20/2007 | SV 07-13463 MT | Armen Aslaheryan | LA 06-10521 EC | 7 | 3101 Peters Circle, Glendale, CA | 2/16/2006 | | Represented by counsel.  RFS granted on real property.  Debtors stopped appearing at 341(a). |
| 13 | 9/24/2007 | SV 07-13519 GM | Ronald de la Fuente | | | | | | |
| 14 | 9/25/2007 | Filing rejected | Jose Coronado | | | | | | |
| 15 | 9/26/2007 | Filing rejected | Yushan Lian | SV 07-11596 KT | 13 | 4727 Greenbush Ave., Sherman Oaks, CA | 5/15/2007 | 7/3/2007 | Face sheet filing.  No appearance at 341(a), no payments. |
| 16 | 9/26/2007 | Filing rejected | Mimi Bensisha | | | | | | |
| 17 | 10/9/2007 | SV 07-13777 GM | Mi La Sul | | | | | | |

| # | DATE FILED | INVOLUNTARY CASE NO. | ALLEGED DEBTOR | Related Voluntary case(s) | Chapter | Address | date filed | date dismissed | Comments on related voluntary case(s) |
|---|---|---|---|---|---|---|---|---|---|
| 18 | 11/09/2007 | SV 07-15778 KM | Tai Hee Pack | SV 07-10735 GM | 13 | 6841 Laisanne Ave., Van Nuys, CA, mailing address - P.O. 3696, Chatsworth, CA 91313 (same as Trust Holding Services) | 3/8/2007 | 4/19/2007 | Face sheet filing. No appearance at 341(a), no payments |
| 19 | 10/9/2007 | SV 07-13779 KT | Sergio Castaneda | | | | | | |
| 20 | 10/10/2007 | SV 07-13808 MT | Jose Ramon Coronado | SV 07-11200 MT | 13 | 19526 Roscoe Blvd, #3, Northridge, CA; mailing address - P.O. 3064, Chatsworth, CA 91313 | 4/13/2007 | 6/1/2007 | Face sheet filing. No appearance at 341(a), no payments. The Specialized mortgage also appears on the matrix in Chin, 07-12376 (#5 and 23 herein) |
| 21 | 10/10/2007 | SV 07-13809 KT | Priya Lakhanpal | | | | | | |
| 22 | 10/17/2007 | SV 07-13924 GM | Thao Huynh | | | | | | |
| 23 | 10/17/2007 | SV 07-13927 MT | Kristy Macy Chin | SV 07-12376 MT | 13 | 19526 Roscoe Blvd, #8, Northridge, CA; mailing address - P.O. 3069, Chatsworth, CA | 7/11/2007 | 8/24/2007 | Face sheet filing. No appearance at 341(a), no payments. Proofs of claim in the two chapter 13 cases for the debtor cover properties at 4719 Worster, Sherman Oaks, 15842 Magnolia, Encino, 32 N 3rd St. #E, Alhambra, 8825 Canterbury Ave, Los Angeles, and 3367 Signature Claim, Pasadena. The specialized mortgage also appears on the matrix in Coronado, 07-13808 (#14 and 20 herein) |
| 24 | 10/18/2007 | SV 07-13959 KT | Chun Ho Shin | | | | | | |
| 25 | 10/19/2007 | SV 07-13969 KT | Yale Buckner | | | | | | |
| 26 | 10/19/2007 | SV 07-13970 GM | Il Hyun Jang | SV 07-12978 KT | 13 | 5018 Don Pio Dr., Woodland Hills, CA | 8/20/2007 | 10/5/2007 | Face sheet filing. No appearance at 341(a), no payments. The mortgage loan also appears on the matrix in Shin, 07-12546 (#35 herein) |
| 27 | 10/22/2007 | SV 07-14020 GM | Nmi Bereishat Yoorbayev | | | | | | |
| 28 | 10/22/2007 | SV 07-14072 KT | Gerardo Torres | | | | | | |
| 29 | 10/25/2007 | SV 07-14074 KT | Yale Buckner | | | | | | |
| 30 | 10/25/2007 | SV 07-14130 | Nicholas Nadkarni Hobbs | | | | | | Appears to be done by same group, but no direct link at this time |
| 31 | 10/29/2007 | | Laura Lee Shurik | SV 07-13604 KT | 13 | 11930 Klang St. Apt. 3, Valley Village, CA | 9/27/2007 | | mailing address P.O. 3069, Chatsworth, CA 91313. Face sheet filing. |
| 32 | 10/29/2007 | | Chul Hoon Suk | SV 07-13692 KT | 13 | 14176 Saddletree Ct., Sylmar, CA | 10/5/2007 | | face sheet filing. Appears to be done by same group, but no direct link at this time. |
| 33 | 10/29/2007 | | Chang Hoon Choe | SV 07-12899 MT | 13 | 2558 W. Avenue K6, Lancaster, CA | 8/1/2007 | 9/21/2007 | mailing address P.O. Box 3069, face sheet pro se filing. Trust agreement form Hyongsan Kale Yoon for 810 S. Lucerne Bl. #703, LA to Lucerne Bl. Trust, West Side Servicing Co, tr, beneficiaries Hyongsan Kate Yoon, Ha Dong Jo, Chong Hoon Cho, Yushan Lian, Chul Jung. 10900 Petra Ave., Granada Hills, CA. West Side Servicing Co, to beneficiaries same as on Lucerne. Zahonelis Reed substitutes in for debtor. Case dismissed for failure to appear at 341(a)/make payments. The America's Servicing loan also appears on the matrix of Manning, 07-11526 (#11 herein). The National City mortgage also appears on the matrix of Guia Fuente, 07-13519 (#13 herein). |
| 34 | n/a | n/a | Lisa Lee Smith | SV 07-12824 KT | 13 | 28 Canterbury Dr, Northridge, CA | 8/9/2007 | 9/20/2007 | Face sheet filing. Mailing address P.O. 3069, Chatsworth, 2813 Winnetka Ave, Simi Valley, CA. CCH Investments LP deed this to the Wanda Trust. Trust Holding Service Co, tr, beneficiaries seem to be Yale Buckner (original borrower), Steven Heflin, Lisa Lee Smith, Celia Alicia Caloca. The Greenpoint loan also appears on the matrix of Hansen, 07-13264 (#37 herein). |

| DATE FILED / DATE nna | CASE, AND INVOLUNTARY DEBTOR / INVOLUNTARY CASE NO. | ALLEGED DEBTOR | INFORMATION ON RELATED VOLUNTARY CASES Related Voluntary Case(s) | Chapter | Address | date filed | date dismissed | Comments on related voluntary case(s) |
|---|---|---|---|---|---|---|---|---|
| 35 | nna | He Seung Shin | SV 07-12546 KT | 13 | 5550 Owensmouth #306, Woodland Hills, CA | 8/17/2007 | 10/5/2007 | Face sheet filing. Dismissed for failure to appear at 341(a)/make payments. The Cartridge loan also appears on the matrix in Tobais, 07-12978 (#26 herein). The original mortgage also appears on the matrix of Lamarque, 07-12433 (#6 herein). |
| 36 | nna | Jin Hong | SV 07-13106 MT | 13 | 3729 Westfall Dr., Encino, CA | 8/28/2007 | 10/15/2007 | Face sheet filing. Mailing address P.O. 3636, Chatsworth. 11782 Collins St., Valley Village, CA - trust agreement from Michael Lee Daniel to Daniel Collins Trust, Trust Holding Service Co, its beneficiaries Michael Lee Daniel, Steven Heflin, Jin Hong, Celia Alicia Calixca. 37461 Limelight Way, Palmdale, CA - trust agreement to Limelight Way Trust, Trust Holding Service Co, trustee, beneficiaries alleged to be Yd Lee, Steven Hohn, Jin Hong, Celia Alicia Calixca. Case dismissed for failure to make payments. 12921 Peppercreek Ln, Cerritos - trust agreement from Hwan M Kim to PepperCorn Trust, beneficiaries - Kim, Steven Heflin, Jin Hong, Celia Alicia Calixca. The EMC loan also appears on the matrix of Hobbs, 07-14153 (#40 herein). Two Novastar loand also appear on the matrix of Williams, 07-13233 (# 7 herein). |
| 37 | nna | William Joseph Hansen | SV 13284 KT | 13 | 2049 Mariner Ave., Simi Valley, CA | 9/6/2007 | 10/17/2007 | Face sheet filing. Mailing address - P.O. 3069, Chatsworth. 18112 Lahey St., Granada Hills, CA - Transferred to Lahey Trust by Maritza Magana, Trust Holding Service Co, trustee, beneficiaries - Maritza Magana, William Joseph Hansen, Alvin Sta Ana, Michael Lee Daniel. The Greenpoint loan also appears on the matrix in Smith, 07-12924 (#34 herein). |
| 38 | nna | Eduardo Alan Luevano | SV 07-13406 MT | 13 | 2182 Sequoia Ave., Simi Valley | 9/14/2007 | | Face sheet filing. Mailing address - P.O. 3636, Chatsworth. WAMU proof of claim shows property at 28718 Via Bellarosa, Valencia deeded from Sang Wook Kweon to Via Bellarosa Trust, beneficiaries Kweon, Eduardo Luevano, Tae Kyung Kim, Michael Lee Daniel. |
| **LOS ANGELES CASES** | | | | | | | | |
| 39 | 10/9/2007 | LA 07-18970 SB | Hee Sook Shim | | | | | |
| 40 | 10/9/2007 | LA 07-18972 AA | Eun Joo Cho | | | | | |
| 41 | 10/9/2007 | LA 07-18986 TD | Chunhua Zhao | | | | | |
| 42 | 10/22/2007 | LA 07-19491 ER | Ho Dong Jo | | | | | |

## CERTIFICATE OF MAILING

I, **JEWELL WILLIAMS**, a regularly appointed and qualified clerk of the United States Bankruptcy Court for the Central District of California, do hereby certify that in the performance of my duties as such clerk, I personally mailed to each of the parties listed below, at the addresses set opposite their respective names, a copy of the

## MEMORANDUM OF OPINION REGARDING ORDER TO SHOW CAUSE REGARDING MULTIPLE INVOLUNTARY BANKRUPTCY PETITIONS

in the within matter. That said envelope containing said copy was deposited by me in a regular United States mailbox in the City of Los Angeles, in said District, on _____

NOV  9 2007

Zshonette Reed - Creditor Counsel

15915 Ventura Blvd. Suite 201

Encino, CA 91436

Mi La Sul - Alleged Debtor
29152 Discovery Ridge Dr
Santa Clarita, CA 91390

Boston Holding Company -
Petitioning Creditor
PO Box 3836
Chatsworth, CA 91313

Julias Stewart - Creditor Counsel
15915 Ventura Blvd #201
Encino, Ca 91436

Tai Hee Pack - Alleged Debtor
17611 Enadia Way
Van Nuys, CA 91406

Sergio Castaneda  - Alleged Debtor
12745 De Santis Ave
Sylmar, CA 91342

Jose Ramon Coronado- Alleged Debtor
19526 Roscoe Blvd # B
Northridge, CA 91324

Priya Lakhanpal - Alleged Debtor
20200 Devonshire St
Chatsworth, CA 91311

Thao Huynh  - Alleged Debtor
12024 Susan Dr
Granada Hills, CA 91344

U.S. Trustee - Interoffice Mail

Jewell M. Williams

_____
(Clerk)

-16-